# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| **GATEWAY ONE LENDING & FINANCE, LLC,** <br><br> **Plaintiff,** <br><br> v. <br><br> **GOLDEN AUTO BROKERS INCORPORATED a/k/a GOLDEN AUTO BROKERS, INC., and RAY MAURICE HAMILTON,** <br><br> **Defendants.** | 1:15-cv-1808-WSD |

## OPINION AND ORDER

This matter is before the Court on Plaintiff Gateway One Lending & Finance, LLC's ("Plaintiff") Motion for Entry of Default Judgment [14] (the "Motion").

## I. BACKGROUND

### A. Facts

Defendant Golden Auto Brokers Incorporated a/k/a Auto Brokers, Inc. ("Golden Auto") owns and operates an automobile dealership in Atlanta, Georgia. (Amended Complaint [9] ¶ 10). Ray Maurice Hamilton ("Hamilton") (together with Golden Auto, "Defendants") is the principal owner of, and Finance Manager

for, Golden Auto. (Id.). Golden Auto sells motor vehicles to consumers pursuant to motor vehicle installment sales contracts. ([9] ¶ 11). The motor vehicle installment sales contracts are then approved and purchased by finance companies, such as Plaintiff. (Id.). The finance companies contemporaneously receive assignment of the motor vehicle installment sales contracts. (Id.).

On or about October 4, 2012, Golden Auto and Plaintiff entered into a Dealer Agreement (the "Dealer Agreement"). ([9] ¶ 12). The Dealer Agreement established a relationship in which Golden Auto submitted to Plaintiff, for purchase, "contract and/or security agreements evidencing installment sales of goods and/or services to [b]uyers, including their successors in interest, in connection with the retail credit sales of motor vehicles." (Id.; see also [9] ¶ 12; [9.1]). Hamilton signed the Dealer Agreement on behalf of Golden Auto. ([9] ¶ 13).

The Dealer Agreement sets forth the terms, conditions, and warranties under which Plaintiff could purchase the motor vehicle installment sales contracts from Golden Auto. ([9] ¶ 14). Under the Dealer Agreement, Golden Auto represented and warranted to Plaintiff that Golden Auto had the right to sell the motor vehicles that were the subject of the motor vehicle installment sales contracts. ([9] ¶ 15). Golden Auto also made the following representations and warranties under the

Dealer Agreement: (i) that the motor vehicles sold under the motor vehicle installment sales contracts were free from all liens and encumbrances except those in favor of Plaintiff; (ii) that the motor vehicle installment sales contracts were valid and enforceable; (iii) that Golden Auto was unaware of any facts indicating the motor vehicle installment sales contracts were uncollectable; and (iv) that the motor vehicle installment sales contracts arose from a bona fide sale in the ordinary course of business. ([9] ¶ 16). Golden Auto's failure, for any reason, to perfect Plaintiff's first priority lien interest in a vehicle within 120 days of the date of execution of the motor vehicle installment sales contract would mean Golden Auto was in breach of the Dealer Agreement. ([9] ¶ 17).

Between late 2012 and late 2014, Plaintiff purchased from Golden Auto numerous motor vehicle installment sales contracts pursuant to the Dealer Agreement. ([9] ¶ 18). Beginning in mid-2014, Golden Auto submitted, and Gateway One purchased, seven motor vehicle installment sales contracts under the Dealer Agreement, including the Wakely Contract [9.2], the Moore Contract [9.3], the Cleveland Contract [9.4], the Gordon Contract [9.5], the Howard Contract [9.6], the Carter Contract [9.7], and the Mordica Contract [9.8] (collectively, the "Contracts"). The Contracts are the subject of this dispute.

B.   Procedural History

On May 20, 2015, Plaintiff filed its Complaint [1] asserting seven counts of breach of contract and two counts of fraud. The seven counts of breach of contract correspond to each of the seven Contracts. Plaintiff generally asserts Defendants failed to secure a perfected first priority lien interest in favor of Plaintiff[1] and failed to deliver clean title to the vehicles that are the subject of the Contracts.[2] ([9] at 10–18). Plaintiff also claims that Defendants fraudulently represented that they would perfect a lien interest in favor of Plaintiff for those vehicles that are the subject of the Contracts, and that Defendants represented they would do so within 120 days of the date of execution of each Contract. ([9] at 18–21). Plaintiff claims that, by submitting the Contracts, Defendants represented that they could, and would, convey "good title" and a "perfected lien interest" in favor of Plaintiff for the vehicles. (Id.). Plaintiff seeks, in addition to damages, attorney's fees under O.C.G.A. § 13-1-11 and § 13-6-11. ([9] at 21–23).

---

[1]   Plaintiff makes this claim only with respect to the Wakely Contract, Moore Contract, Cleveland Contract, Gordon Contract, Howard Contract, and Carter Contract. ([9] ¶ 20).

[2]   Plaintiff acknowledges in the Motion that it has recovered the amounts owed to it in reference to the Gordon Contract in Count IV. ([14.1] at 2, n.1). Plaintiff notes that it is not seeking any damages with respect to Count IV. (Id.).

4

On May 31, 2015, Defendants were served with the summons and Complaint. ([3]). On August 14, 2015, upon Plaintiff's request, the Clerk entered default. On May 31, 2016, Plaintiff filed its initial Motion for Default Judgment [7] ("First Default Motion"). On September 22, 2016, the Court issued an order [8] ("September 22nd Order") directing Plaintiff to amend its Complaint to adequately allege citizenship of the parties. On September 28, 2016, Plaintiff filed its Amended Complaint pursuant to the Court's September 22nd Order. On December 28, 2016, Plaintiff filed its second Motion for Default Judgment [10] ("Second Default Motion"). On March 10, 2017, the Court entered an order denying the Second Default Motion on the grounds that Plaintiff failed to serve Defendants with the Amended Complaint. On March 16, 2017, Plaintiff served Defendants with the Amended Complaint. ([12]). On March 31, 2017, Plaintiff requested the Clerk enter default. On April 3, 2017, the Clerk entered default. The same day, Plaintiff submitted the Motion—its third Motion for Default Judgment. Defendants have not filed a response to the Motion.

## II.  LEGAL STANDARD

Rule 55(b) of the Federal Rules of Civil Procedure provides that default judgment may be entered against defaulting defendants as follows:

> (1)  ***By the Clerk***.  If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on

5

> the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.
>
> (2) **_By the Court_**. In all other cases, the party must apply to the court for a default judgment. . . . If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to:
> (A) conduct an accounting;
> (B) determine the amount of damages;
> (C) establish the truth of any allegation by evidence; or
> (D) investigate any other matter.

Fed. R. Civ. P. 55(b).

"[T]here is a strong policy of determining cases on their merits . . . . [Courts] therefore view defaults with disfavor." In re Worldwide Web Sys., Inc., 328 F.3d 1291, 1295 (11th Cir. 2003). "The entry of a default judgment is committed to the discretion of the district court." Hamm v. DeKalb Cnty., 774 F.2d 1567, 1576 (11th Cir. 1985), cert. denied, 475 U.S. 1096 (1986) (citing 10A Charles Alan Wright, et al., Federal Practice & Procedure § 2685 (1983)).

When considering a motion for default judgment, a court must investigate the legal sufficiency of the allegations and ensure that the complaint states a plausible claim for relief. Cotton v. Mass. Mut. Life Ins. Co., 402 F.3d 1267, 1278 (11th Cir. 2005); Bruce v. Wal-Mart Stores, Inc., 699 F. Supp. 905, 906 (N.D. Ga.

1988). If "the plaintiff has alleged sufficient facts to state a plausible claim for relief," a motion for default judgment is warranted. Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1246 (11th Cir. 2015). "Conceptually, then, a motion for default judgment is like a reverse motion to dismiss for failure to state a claim." Id. at 1245. "[W]hile a defaulted defendant is deemed to 'admit[] the plaintiff's well-pleaded allegations of fact,' he 'is not held to admit facts that are not well-pleaded or to admit conclusions of law.'" Cotton, 402 F.3d at 1278 (quoting Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)).

## III. DISCUSSION

### A. Breach of Contract

Plaintiff asserts breach of contract of the Dealer Agreement based on the seven Contracts Plaintiff purchased in 2014. "Under Georgia law, the essential elements of a breach of contract claim are (1) a valid contract; (2) material breach of its terms; and (3) damages arising therefrom." Wright v. Wells Fargo Bank, N.A., No. 1:15–cv–02416–AT–JCF, 2015 WL 12159206, at *5 (N.D. Ga. Oct. 8, 2015). Plaintiff submits as evidence the Dealer Agreement—the "breached" contract in this case. The contract includes the signatures of Golden Auto and Plaintiff. ([9.1] at 8). The contract is dated October 4, 2012. (Id.). The Dealer

7

Agreement states that, in the event of a breach of the representations and warranties provided in it, Golden Auto is liable to Plaintiff for (i) the unpaid balance owing under the Contracts, including earned and unpaid finance charges; (ii) Golden Auto's portion of any unearned finance charges which it previously received; (iii) all damages, losses, and expenses incurred by Plaintiff; and (iv) all out of pocket expenses incurred by Plaintiff in connection with collecting any amounts due, including reasonable attorney's fees and court costs. ([9.1] ¶ 6(a)).

Plaintiff also submits as exhibits to the Motion the seven Contracts evidencing the agreements to purchase vehicles under the Dealer Agreement. ([9.2]–[9.8]). The Contracts provide the description of the vehicles, the total sale prices, the financing amounts, the trade-in values, and the signatures of the parties. (Id.). They also state that Plaintiff is the assignee of the Contracts. (Id.). Plaintiff alleges that, with regard to the Wakely Contract, Moore Contract, Cleveland Contract, Gordon Contract, Howard Contract, and Carter Contract, Defendant breached the Dealer Agreement by failing to perfect a lien interest in favor of Plaintiff within 120 days. ([9] ¶¶ 27, 32, 37, 42, 47, 52). With respect to all of the Contracts, Plaintiff alleges Defendant breached the Dealer Agreement by failing to pay off the loans on the trade vehicles. ([9] ¶¶ 28, 33, 38, 43, 48, 53, 57). Plaintiff

also alleges damages for the breaches, including unpaid balances on the vehicles, late charges, and finance charges. ([9] ¶¶ 29, 34, 39, 44, 49, 54, 58).

Here, considering Defendant is deemed to admit Plaintiff's well-pleaded allegations of fact, Plaintiff has submitted sufficient evidence for the Court to conclude that a valid contract exists, a material breach of its terms occurred, and damages arose from the breaches. Plaintiff has "alleged sufficient facts to state a plausible claim for relief" as to its breach of contract claim. Surtain, 789 F.3d at 1246.

B.   Fraud

Plaintiff also asserts a claim for fraud against Golden Auto and Hamilton. Fraud in Georgia includes five elements: (1) a false representation or omission of a material fact; (2) scienter; (3) intention to induce the party claiming fraud to act or refrain from acting; (4) justifiable reliance; and (5) damages as the proximate result of defendant's action. McCabe v. Daimler AG, 160 F. Supp. 3d 1337, 1350 (N.D. Ga. 2015) (citing Parrish v. Jackson W. Jones P.C., 278 Ga. App. 645, 629 S.E.2d 468 (2006)). Plaintiff alleges that, in submitting the Contracts for purchase to Plaintiff, Defendants represented that they could, and would, convey good title to the vehicles. ([9] ¶¶ 61, 71). Plaintiff alleges Defendants represented they could, and would, within 120 days, perfect lien interests in the vehicles in favor of

9

Plaintiff. ([9] ¶¶ 62, 70). Plaintiff states that Defendants represented the Contracts were valid and enforceable. ([9] ¶¶ 63, 73). Plaintiff argues that it reasonably relied upon the representations made by Defendants. ([9] ¶¶ 65, 74). Plaintiff states that Defendants' representations concerning the Contracts were false and were known by Defendants to be false, and that Defendants made the representations for the purpose of defrauding Plaintiff. ([9] ¶¶ 66-67; 75-76). Plaintiff also alleges damages in excess of $75,000 against Hamilton and $75,000 against Golden Auto—for a total of $150,000 in damages for the fraud. (Id.).

Accepting Plaintiff's well-pleaded allegations of fact as admitted by Defendants, Plaintiff has sufficiently demonstrated Defendants made false representations to Plaintiff knowing the representations were false and intending to induce Plaintiff to purchase the Contracts. The facts, as deemed admitted, are further evidence that Plaintiff justifiably relied on the false representations, and Plaintiff suffered damages as the result of Defendants' wrongful conduct. Plaintiff has "alleged sufficient facts to state a plausible claim for relief" for fraud. Surtain, 789 F.3d at 1246.

C. <u>Remedies</u>

Plaintiff requests the Court enter judgment against Defendant Golden Auto as follows:

<u>Count I</u>:   **$42,426.39**, which includes (1) the principal amount of $28,993.99; (2) $174.72 in late charges; (3) $90.00 in returned payment charges; (4) $9.50 in pay-by-phone charges; (5) $1,814.87 in finance charges; (6) $11,343.31 in additional finance charges, calculated by the Court using Plaintiff's suggested per diem rate of $11.11 from February 25, 2015, through the date of judgment.

<u>Count II</u>: **$30,964.24**, which includes (1) the principal amount of $23,280.16; (2) $75.60 in late charges; (3) $271.15 in finance charges, and (4) $7,337.33 in additional finance charges, calculated by the Court using Plaintiff's suggested per diem rate of $7.33 from March 17, 2015, through the date of the judgment.

<u>Count III</u>: **$17,989.91**, which includes (1) the principal amount of $14,721.11; (2) $45.58 in late charges; and (3) $3,223.22 in additional finance charges, calculated by the Court using Plaintiff's suggested per diem rate of $3.22 from March 17, 2015, through the date of the judgment.

<u>Count V</u>: $**40,737.81**, which includes (1) the principal amount of $30,843.33; (2) $174.77 in finance charges; and (3) $9,719.71 in additional finance charges, calculated by the Court using Plaintiff's suggested per diem rate of $9.71 from March 17, 2015, through the date of the judgment.

<u>Count VI</u>: $**30,156.87**, which includes (1) the principal amount of $25,956.57; (2) $22.50 in late charges; (3) $89.30 in finance charges; and (4) $4,088.50 in additional finance charges, calculated by the Court using Plaintiff's suggested per diem rate of $4.25 from April 25, 2015, through the date of the judgment.

> Court VII: **$33,151.80**, which includes (1) the principal amount of $24,855.34; (2) $160.78; (3) $277.60 in finance charges; and (4) $7,858.08 in additional finance charges, calculated by the Court using Plaintiff's suggested per diem rate of $8.16 from April 24, 2015, through the date of the judgment.
>
> Count VIII: **$116,313.82** for fraudulent misrepresentations.

([14.1] at 4–6). Plaintiff requests the Court further enter judgment against Defendant Hamilton as follows:

> Count IX: **$116,313.82,** for fraudulent misrepresentations.

([14.1] at 6). Finally, Plaintiff requests the Court enter judgment against both Defendants as follows:

> Count X: **$11,656.38**, for Plaintiff's reasonable attorney's fees.
>
> Count XI: **$6,156.70**, for Plaintiff's recovery of all costs and expenses of litigation, including reasonable attorney's fees, as provided for in O.C.G.A. §13–6–11.

([14.1] at 6–7).

The Court may grant default judgment and award damages without a hearing if "the amount claimed is a liquidated sum or one capable of mathematical calculation." Adolph Coors Co. v. Movement Against Racism and the Klan, 777 F.2d 1538, 1543 (11th Cir. 1985) (quoting United Artists Corp. v. Freeman, 605 F.2d 854, 857 (5th Cir. 1976)). "Damages may be awarded only if the record adequately reflects the basis for the award." Adolph Coors, 777 F.2d at 1544; see

also Elektra Entm't Grp., Inc. v. Jensen, No. 1:07-cv-54-JOF, 2007 WL 2376301, at *2 (N.D. Ga. 2007) ("While a party in default admits the well-pleaded allegations of the complaint against it, a plaintiff cannot satisfy the certainty amount by simply requesting a specific amount. He must also establish that the amount is reasonable under the circumstances."). The Court is obligated to assure (i) there is a proper basis for the damage award it enters, and (ii) that damages are not awarded solely as the result of the unrepresented defendant's failure to respond. Anheuser Busch, Inc. v. Philpot, 317 F.3d 1264, 1265 (11th Cir. 2003).

In support of its Motion, Plaintiff submits an affidavit from Michael Sismondo, an individual who claims to have personal knowledge of Plaintiff's business records. ([14.2] at 1). Sismondo represents that he is employed by Plaintiff as a Legal Specialist in the Loss Mitigation Department. ([14.2] at 2). The affidavit provides the "amounts that remain owing in respect of the Contracts." ([14.2] at 4). The numbers presented in the affidavit differ widely from the numbers provided in the Motion, and discussed above. While the amounts appear "capable of mathematical calculation," it is unclear which numbers require calculating. The affidavit also appears to provide representations regarding the damages resulting from Defendants' fraudulent representations. The affidavit states that "[t]he amount owed to Gateway One under the Contracts totals

$116,313.82," and "[t]hat as a result of the actions of Golden Auto and Hamilton, [Plaintiff] has suffered damages in the amount of $116,313.82." ([14.2] at 5). It is unclear to the Court whether Plaintiff is seeking $116,313.82 in two instances, or $116,313.82 joint and severally from Defendant Golden Auto and Hamilton. The Motion asserts damages in the amount of $116,313.82 against Hamilton under Count IX, and $116,313.82 against Golden Auto under Count X. It is also unclear on what basis Plaintiff calculated these amounts—especially considering Plaintiff, in its Complaint, asserted damages of approximately $75,000 against Hamilton and approximately $75,000 against Golden Auto.

Plaintiff also submits an affidavit from Christopher J. Reading, an associate with the law firm of McCullough, Payne Haan & Nadler, LLC, and lead counsel for Plaintiff in the action, to support its claim for attorney's fees. ([14.3] at 1). Reading represents that, through May 31, 2016, Plaintiff incurred $6,156.70 in expenses in connection with the lawsuit. ([14.3] at 2). Reading attaches the billing statements that his law firm submitted to Plaintiff, which support this $6,156.70 amount. ([14.3] at 5–10). This amount also matches the amount presented in Plaintiff's Motion for attorney's fees under O.C.G.A. §13–6–11. Plaintiff fails, however, to specially plead allegations regarding Defendant's bad faith, stubborn litigiousness, or actions causing Plaintiff unnecessary trouble and expense as

required by the statute.  See O.C.G.A. §13–6–11.  Plaintiff also fails to submit an affidavit or other support regarding the $11,656.38 in additional attorney's fees it seeks under Count X.

The Court determines it necessary to hold a hearing to establish which amounts Plaintiff is relying on to calculate the damages resulting from the breach of contract, how it calculated fraud damages in the amount of $116,313.82, whether fraud damages are asserted against each Defendant individually, or both Defendants collectively, on what grounds Plaintiff is seeking attorney's fees under O.C.G.A. §13–6–11, and on what basis Plaintiff requests an award of additional attorney's fees in the amount of $11,656.38.

## IV.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the Court will hold an evidentiary hearing to receive evidence regarding the damages claimed for the breaches of contract, fraud, and attorney's fees.  The hearing will be held on January 16, 2018, at 9:30 a.m., in Courtroom 1705, Richard B. Russell Federal Building and Courthouse, 75 Ted Turner Drive, S.W., Atlanta, GA 30303.  At the hearing, Plaintiff shall present evidence on the following issues: (1) the amount of damages it claims for breaches of each of the Contracts (Count I through Count IX); (2) the

amount of damages it seeks for its fraud claim against Defendant Hamilton and Defendant Golden Auto; (3) the attorney's fees it seeks under O.C.G.A. §13–6–11; and (4) the grounds and calculation for the award of $11,656.38 in additional attorney's fees.

**SO ORDERED** this 14th day of December, 2017.

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE